E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KALEY CHAN (WA Bar No. 44393)
Special Assistant United States Attorney
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:   (619) 546-9741
     E-mail:      kaley.chan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GABRIEL MICHEL BECERRA (4),<br>  aka "Steven,"<br><br>    Defendant. | No. 24-CR-461-FMO<br><br>**UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S REQUEST FOR RECOSIDERATION OF RELEASE ON BOND**<br><br>Date: December 18, 2024<br>Time: 1:00 p.m. |

    The UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, E. Martin Estrada; Assistant U.S. Attorney Jena MacCabe; and Special Assistant U.S. Attorney Kaley Chan, hereby files the attached memorandum of points and authorities in support of its motion to detain.

**I. Introduction**

    The United States maintains its position that Defendant should be detained pursuant to 18 U.S.C. § 3142 on the basis of danger to the community and serious risk of flight. In sum, Defendant is indicted with nine felonies, including violent offenses, for which he faces significant time in custody.[1] When he learned of the charges against him, Defendant made representations that he was going to flee to Mexico

---

[1] Sentencing Guidelines for kidnapping begin at level 32. Adding +6 for the demanded ransom, at a criminal history category 1, Defendant's guidelines range is 235-293 months in custody.

to avoid accountability and took steps demonstrative of his intent to do so.

Fortunately, law enforcement was able to arrest Defendant before he fled. Upon arrest, law enforcement recovered a Glock 9mm handgun from Defendant's person. In a post-*Miranda* statement, Defendant admitted that he had been evading police up until his arrest and that the gun recovered during the arrest belonged to him. Further evidence shows this is not the only firearm Defendant has access to, nor is it his first encounter with the judicial system. At the time of his arrest, Defendant was in a State diversion program for charges of unlawfully carrying a loaded firearm.

Based on the following facts and evidence, there are no conditions or combination of conditions that can reasonably assure the safety of the community or Defendant's presence in court. Accordingly, Defendant should be detained pending trial.

## II. Statement of Facts

Defendant was a member of a transportation cell led by co-defendant, Miguel Angel Avila, operating out of the Central District of California. The members of the transportation cell coordinated with human smugglers to pick up and transport illegal aliens, hereinafter referred to as undocumented non-citizens (UNC), from locations near the U.S./Mexico international border in the Southern District of California and District of Arizona to stash houses in the Central District of California and elsewhere. As the transportation cell became more savvy, they began operating a scheme to increase profits by cutting out the middleman. In short, whichever cell member was coordinating the pick-up would instruct their driver to take away the UNCs' cellular phones, ditch any foot guides, and employ the child-lock on the car doors to prevent the UNCs' escape. The driver would then turn over the UNCs and their phones to the cell member coordinating the event, who would then call the family members of the UNCs and demand ransom in exchange for their safe release. According to the evidence, members of the transportation cell "stole" UNCs from smugglers in this way on <u>multiple</u> occasions.

On one such occasion, between on or about March 21-23, 2024, Defendant and co-defendants kidnapped and held hostage four UNCs. Much like previous occasions, the co-defendants took the UNCs' personal cellular phones and used them to call their family members and demand money in exchange for the UNCs' safe release, threatening physical harm to the UNCs if the family members did not pay. When the family members of one UNC stated they could not pay, the UNC was removed from the group and

did not return.

The next day, a UNC who feared for his life after seeing the other UNC taken away, escaped from the motel they were being held in and ran to a nearby boba shop. A co-defendant and unindicted co-conspirator chased the UNC to the boba shop where the co-defendant proceeded to body slam the UNC, place him in a chokehold, and then strike him in the head before leaving. When the co-defendant and unindicted co-conspirator returned to the hotel without the UNC, the co-defendant threatened the two remaining UNCs, bound their hands and feet, and took them to a new location where they were held until their eventual release. Defendant assisted in this effort. Eventually, one of the UNCs was released to a family member who paid $11,000 in cash to the balaclava-clad Defendant and two co-defendants.

On July 30, 2024, Defendant and his co-defendants were indicted for conspiring to commit hostage taking and hostage taking, conspiring to commit kidnapping and kidnapping, conspiring to commit interference with commerce by extortion and attempted extortion, conspiring to transport illegal aliens, and transporting illegal aliens for private financial gain. Dkt. 1.

On September 9, 2024, after his four co-defendants had been arrested and arraigned on the indictment, the U.S. Attorney's Office put out a press release indicating that Defendant was a fugitive.[2]

On September 17, 2024, Defendant was arrested. Dkt. 79. Despite weeks of searching for the Defendant, he successfully evaded law enforcement until they were able to identify a new cell phone number for Defendant, obtain a ping warrant, and track his whereabouts.[3] During the arrest, a 9mm Glock pistol was found on Defendant's person. In a post-*Miranda* statement, Defendant admitted to knowing about the pending charges and attempting to evade law enforcement, as well as to possession of the firearm. Defendant also told law enforcement he had an upcoming diversion hearing in State court.

At the time of his arrest, Defendant had a significant limp caused by being shot in the leg approximately three months earlier after stealing UNCs from another smuggler and holding them in a hotel room in San Bernadino, much like the charged offenses. Enclosure 1.

---

[2] Press Release, Four Southern California Men Arrested on Charges Alleging They Kidnapped Migrants and Held Them for Ransom (September 9, 2024), https://www.justice.gov/usao-cdca/pr/four-southern-california-men-arrested-charges-alleging-they-kidnapped-migrants-and.

[3] Issued by the Honorable Alicia G. Rosenberg, Magistrate Judge for the Central District of California on September 11, 2024 in case no. 24-MJ-5522.

On September 18, 2024, Defendant appeared before this Court for his initial appearance and was arraignment on the indictment. At that hearing, this Court found there were no conditions or combination of conditions that could reasonably assure Defendant's appearance and the safety of any person or the community. Dkt. 68.

On September 19, 2024, when Defendant failed to appear for a diversion hearing in Los Angeles Superior Court, diversion was terminated and criminal proceedings reinstituted on two counts of PC25850(a) – Carrying a loaded firearm. Enclosure 2.

On September 25, 2024, the United States sought and obtained a search warrant for Defendant's cellular phone.[4] A subsequent search of Defendant's phone revealed the following:

- Defendant has a number of additional aliases, to include: El Casper, Ghost, Chili, and El Chicken Little.

- After learning of the pending charges, Defendant advised several associates that he intended to flee for Mexico. Examples include:

    **September 10, 2024:**
    BECERRA:     I wanna go to Mexico
    BECERRA:     Is the only way
    Contact 1:   No bro. You still sick
    Contact 1:   You need medical attention still
    BECERRA:     [*sends link to CDCA press release*]

    **September 10, 2024:**
    BECERRA:     [*Sends image of news story about this case*]
    BECERRA:     Avila, Salmeron, Garcia and Becerra have also been charged with two counts of conspiracy to interfere with commerce by extortion, as well as attempted interference with commerce by extortion, which are violations of the Hobbs Act.
    BECERRA:     I'm sick
    Contact 2:   U gone be solid
    BECERRA:     Can yu take me to Mexico?

    **September 10-11, 2024:**
    BECERRA:     The feds looking for me
    Contact 3:   ouch
    Contact 3:   that sucks bro
    Contact 3:   how they get yo info?
    BECERRA:     [*Sends image of news story about this case*]

---

[4] Issued by the Honorable Michael S. Berg, Magistrate Judge for the Southern District of California on September 25, 2024 in case no. 24-MJ-4549.

| | | |
|---|---|---|
| BECERRA: | 😬😬😬😬 | |
| Contact 3: | that aint you doe | |
| BECERRA: | [*Sends image about this case with the name "Gabriel Michel Becerra"*] | |
| Contact 3: | woahh | |
| BECERRA: | 😬 | |
| BECERRA: | I'm on Fox News | |
| Contact 3: | cuzzo | |
| BECERRA: | Yo | |
| Contact 3: | you got the registration and pink on the whip? so when and if i do get it i can switch the name over to me | |
| BECERRA: | Ya | |
| Contact 3: | okay just in case cuzzo put all the papers in the whip and hide the key outside or sumn so if you have to get jiggy i can get it | |

**omitted messages**

| | |
|---|---|
| BECERRA: | I lowkey just need to stay out the way and be moving a lot |
| BECERRA: | Just don't talk to lots of ppl to do tht… |
| Contact 3: | … im knowing |
| Contact 3: | you can only move so much |
| BECERRA: | Ong wat should I do |
| Contact 3: | M is your best bet bro at least till shit dies down |
| BECERRA: | Ong huh |
| Contact 3: | you got family there? |
| BECERRA: | Ya and my boss imma move wit my boss |

- Defendant made arrangements with a contact living in Mexico (and known to law enforcement) to flee to Mexico and live with the contact (Contact 4).

**September 10, 2024:**

| | |
|---|---|
| Contact 4: | [*Sends image of Fox News coverage of this case*] |
| Contact 4: | [*Sends image of Fox News coverage of this case*] |
| Contact 4: | [*Initiated audio call - answered*] |
| BECERRA: | [*Initiated audio call – not answered*] |
| Contact 4: | Hola |
| Contact 4: | Hold on ima go to my aunts house to get internet |
| BECERRA: | [*Initiated 14min 22 second audio call*] |
| BECERRA: | Answer [*Sent 3 times*] |
| Contact 4: | [*Sends image of Fox News coverage of this case*] |
| BECERRA: | [*Initiated 8min 48 second audio call*] |
| Contact 4: | [*Initiated audio call with third party – answered*] |
| BECERRA: | Can uu come get me |
| BECERRA: | From tj???? |
| Contact 4: | Yea |
| Contact 4: | I need some chip tho |

**September 10, 2024:**
BECERRA: Cuh said turn yo self in
BECERRA: 😂😂😂😂😂

**messages with Contact 4 omitted**

BECERRA: Fucckkk tht
BECERRA: Imma sneak away

**September 11, 2024:**
BECERRA: Ok imma go
BECERRA: Fuck it
Contact 4: Why wey
BECERRA: That's my only choice
BECERRA: Imma come to yu
Contact 4: Are you ready
Contact 4: For that
BECERRA: Wey
BECERRA: I'm not ready for no
BECERRA: Jail
BECERRA: So wtf else
BECERRA: Can I do
BECERRA: ???
Contact 4: Vente [*Come*]
Contact 4: Ya sabes we que mis puertas te las abierto [*You already know that I open my doors to you*]
Contact 4: Leave tonight vente [*come*] wey
Contact 4: Por Mexicali [*For Mexicali*]
BECERRA: I am
Contact 4: Or tj hit the bus stop
BECERRA: Was the best way bro
BECERRA: Like a Fs FS [*for sure for sure*]
Contact 4: Tj is good but cross in a car
Contact 4: And go to the bus stop
BECERRA: Imma go in my friend car

- Defendant sought the assistance of <u>one of his proposed sureties</u> in fleeing to Mexico and the proposed surety (Contact 5) agreed to assist him.[5]

**September 10, 2024:**
BECERRA: Ok I'm moving to Mexico
BECERRA: I'm sick rn
Contact 5: why wtf
BECERRA: [*Sends unknown image*]
Contact 5: who that 👀
Contact 5: ri
BECERRA: Fredo and me and riri

---

[5] "Contact 5" shares the same phone number as Defendant's proposed surety, ending in 0393.

|   |   |
|---|---|
| BECERRA: | And allat |
| BECERRA: | [*Sends unknown image*] |
| Contact 5: | daaaamn n***a from along time ago |
| BECERRA: | It says Gabriel aka Steven |
| Contact 5: | sent it again closed |
| BECERRA: | [*Sends image of news story about this case*] |
| Contact 5: | damn how you find that |
| Contact 5: | 😩 |
| BECERRA: | 😒🙁 |
| Contact 5: | this shit brazy |
| Contact 5: | some body told |
| BECERRA: | Idk whoooo no1 knows my real name |
| Contact 5: | cops had face |
| BECERRA: | Ya |
| Contact 5: | so they did they job all that time |
| Contact 5: | it took but wtf |
| Contact 5: | kidnap hold life 😩😩 |
| BECERRA: | I'm gonna go to Mexico |
| Contact 5: | you gotta go ASAP |
| BECERRA: | Finna move to Mexico by tonight |
| BECERRA: | Can yu take me to tj? |
| Contact 5: | you know i will n***a i love you i'll do this shit with you |
| BECERRA: | I need to go to tj and then [*name omitted*] will pick me up |
| Contact 5: | okay when you wna gooo 😩 |

- Defendant took steps consistent with moving, to include trying to sell his vehicle. As an example:

> ***BECERRA posts car for sale on social media***
> **September 12, 2024:**
> Contact 6:   Ay bro can I ask why you are selling it?
> BECERRA:    Moving

- Even after learning of the pending charges, Defendant continued engaging in criminal activity.

- Defendant has access to additional firearms. See below images sent by Defendant on July 12, July 21, August 10, and September 7, 2024, respectively:






- Just days prior to his arrest, defendant sought out a high caliber weapon:

  **September 12, 2024:**
  BECERRA:     Yu got gun license? I need a sniper 50 cal
  Contact 7:    Whit us
  Contact 7:    Let me see se I can do
  Contact 7:    I let you know
  Contact 7:    They are going to let me know later on the day
  BECERRA:     [*Initiated a 24 second call*]

8

- The day prior to his arrest, Defendant sought to hire someone to kill "a girl" "in Los Angeles":

    **September 16, 2024:**
    BECERRA:   Te daré 35k para el jale [*I'll give you 35k for the pull*]
    BECERRA:   matar a alguien [*kill someone*]
    BECERRA:   Mi dice Que rollo [*What's going on*]
    Contact 8:   que ocupas caminador oh chófer [*What are you doing walker or driver*]
    BECERRA:   💥💥
    BECERRA:   matar a alguien [*kill someone*]
    BECERRA:   35k
    Contact 8:   ok dónde va ser el jale y si lo are solo oh tendré compañía [*ok where is the pull going to be and if you do it alone or I will have company*]
    BECERRA:   Solo es una chica [*She's just a girl*]
    BECERRA:   Pero esta en Los Angeles [*But it's in Los Angeles*]

    **September 16, 2024:**
    BECERRA:   Tengo un trabajo, necesito que alguien mate a alguien. Para 35k [*I have a job, I need someone to kill someone. For 35k*]
    Contact 9:   Que rollo [*What's up*]

    **September 16, 2024:**
    BECERRA:   Tengo un trabajo, necesito que alguien mate a alguien. Para 35k [*I have a job, I need someone to kill someone. For 35k*]
    BECERRA:   ?
    Contact 10:   Pagas la mitad primero [*You pay half first*]

### III. Argument

Under the provisions of the Bail Reform Act, if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer *shall* order detention of the person before trial." 18 U.S.C. § 3142(e) (emphasis added). On September 17, 2024, this Court made such a finding based on the evidence available at that hearing, and detained Defendant pending trial. Since that time, only more evidence demonstrating Defendant's serious risk of flight and danger to the community have to come to light. Accordingly, this Court should deny Defendant's request for reconsideration.

In determining whether detention is appropriate, the Court must consider: (1) the "nature and circumstances of the offense charged," (2) the "weight of the evidence against" Defendant, (3) the "history and characteristics" of Defendant, including his "character, physical and mental condition,

9

family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and (4) the "nature and seriousness of the danger to any person or the community." 18 U.S.C. § 3142(g). Each of the §3142(g) factors squarely weigh in favor of continued detention.

### A. Defendant poses a serious risk of flight.

Defendant is charged with offenses that carry Sentencing Guideline recommendations exceeding 20 years in custody and a statutory maximum of life imprisonment. The weight of the evidence for those charges is overwhelming. The United States has produced video, photo, eyewitness, and documentary evidence, including interviews with three victims of Defendant's crimes, surveillance video showing Defendant at the scene of the crime during the crime, and hundreds of text and WhatsApp messages documenting Defendant's integral participation in the offenses. Most recently, the Government has produced a copy of Defendant's cellular phone recovered during his arrest, which documents his repeated assertions of moving Mexico and attempts to sell his car upon learning about the pending charges from news sites reporting on a press release about this case. Although Defendant has significant ties to the area, the facts above also demonstrate not only his willingness to flee, but his ability to do so and live with the multiple contacts in Mexico developed through his illicit activities. His stated desire to flee is also consistent with his admitted efforts at evading law enforcement after learning about the pending charges, facts that are corroborated by the text messages above. Additionally, Defendant's State charges for possession of a firearm have been resurrected — meaning instead of one criminal case, he is now facing two. This factor, which did not exist prior to his arrest, coupled with his newfound knowledge of the consequences of conviction on these offenses, only heightens the incentive for Defendant to flee.

Most significantly and telling, Defendant's own proposed surety ("Contact 5") not only encouraged Defendant to flee to Mexico, but he also agreed to drive Defendant to Mexico to avoid the pending charges, stating "i'll do this shit with you." The evidence before this Court at his initial hearing more than supported a finding that Defendant posed a serious risk of flight. The evidence now before the Court demonstrates that flight is a virtual certainty. Accordingly, there is no condition or combination of conditions that can reasonably assure Defendant's presence as required.

**B. *Defendant presents a danger to the community.***

Defendant has repeatedly demonstrated that he poses a real and significant danger to the community. Defendant is not only charged with dangerous crimes that resulted in physical harm to victims, evidence demonstrates that this was not a unique event in Defendant's criminal background. In fact, Defendant participated in similar kidnapping events on other occasions. On one such occasion, Defendant's behavior resulted in two armed men seeking Defendant out and shooting him in a hotel parking lot. Defendant was also identified in a separate investigation as having fired a weapon at another person involved in UNC-smuggling earlier this year.

In addition to the violence associated with his UNC-smuggling activities, Defendant clearly has access to firearms. Not only did he have a handgun on his person when arrested, at the time, Defendant was in a diversion program for State charges for unlawfully carrying a firearm. Despite the State charges and diversion program, Defendant was not deterred. He both carried a firearm on his person and sent multiple images of firearms and himself with firearms to associates.

Finally, and most importantly, the day immediately preceding his arrest, Defendant solicited no fewer than three people to carry out a murder of — in his own words — "just a girl … in Los Angeles." Nothing in the text messages is indicative of a joke or unserious threat. To the contrary, Defendant reached out to people who entertained his request. There are few cases as clear cut as this. Defendant poses a clear and immediate danger to the community and there is no condition or combination of conditions that can reasonably assure the safety of the community if he were released from custody.

\\
\\
\\
\\
\\
\\
\\
\\
\\

# IV. Conclusion

In light of the foregoing, there is no condition or combination of conditions that can reasonably assure the safety of the community or Defendant's presence in court. Accordingly, Defendant should be detained pending trial.

DATED: December 16, 2024

                                            Respectfully submitted,

                                            E. MARTIN ESTRADA
                                            United States Attorney

                                            */s/ Kaley S. Chan*
                                            KALEY S. CHAN
                                            Special Assistant U.S. Attorney

# ENCLOSURE (1)

**Excerpts from a San Bernadino Police Report regarding the June 15, 2024 shooting.**

| POLICE DEPARTMENT CA0361000 SAN BERNARDINO, CALIFORNIA | CR2 | CASE NUMBER |
|---|---|---|

**Follow-up:**

On Tuesday, June 18th, 2024, I was assigned as a Detective in the Violent Crimes Unit for the San Bernardino Police Department. I was assigned to investigate a PC 245(a)(2) – Assault w/ a Firearm that occurred on Saturday, June 15th, 2024, at approximately 1837 hours, at Motel 6 located at 777 W. 6th Street. Officers responded and contacted the victim, Gabriel Michel, who advised he had been shot in the leg and there were two suspects.

**Investigation:**

The shooting incident took place in the parking lot of Motel 6. Officer R. Garcia located (3) 9mm fired cartridge casings (FCC's) in the parking lot area that were collected as evidence. Officer Garcia also located one of Gabriel's shoes that fell off him when he was running from the suspects.

Officer S. Arabia reviewed the video surveillance footage from Motel 6 and obtained a copy of it. Officer Arabia copied that footage to a CD and tagged it into evidence. On Tuesday, June 18th, 2024, I signed out the two CD's that Officer Arabia tagged in. Officer Arabia noted that one of the CD's was tagged into evidence under tag # 24-6300, but the second CD evidence tag # was listed as the case number inadvertently. I located the second CD he tagged in under evidence tag # 24-6299. I reviewed the video surveillance and completed a breakdown of the footage. (Refer to Video Surveillance Review heading below for further).

While reviewing the video surveillance footage I observed the suspects arrive in a white Toyota Corolla that had a CA license plate affixed to it of ▇▇▇▇▇▇. A records check of that license plate came back to:



The driver of the Toyota Corolla was listed as suspect #1 by Officer Rodriguez. In the video surveillance suspect #1 was wearing black shoes, gray pants, black hooded sweatshirt, black hat, blue medical mask, and blue/green latex gloves. Suspect #1 was the only suspect that could be seen armed with a handgun and firing several rounds.



| REPORTING OFFICER | ID # | DATE | FURTHER ACTION YES | REVIEWED BY | DATE |
|---|---|---|---|---|---|

| POLICE DEPARTMENT CA0361000 | CR2 | CASE NUMBER |
|---|---|---|
| SAN BERNARDINO, CALIFORNIA | | |

*Channel17  06-15-2024 18:33:28*
The other suspect gets back into the suspect vehicle and drives over to pick this suspect up. They then continue to chase the victim as he runs away.




*Channel18  06-15-2024 18:33:10*
While one suspects chases after the victim Gabriel, the other suspect chases after the victim ▮▮▮▮▮▮. The suspect can be seen holding a handgun in his left hand. This suspect points the handgun at Manuel as he drives off.






| REPORTING OFFICER | ID # | DATE | FURTHER ACTION YES | REVIEWED BY | DATE |
|---|---|---|---|---|---|
| ▮▮▮▮ | ▮▮▮▮ | | | | |

24

| POLICE DEPARTMENT CA0361000 | CR2 | CASE NUMBER |
|---|---|---|
| SAN BERNARDINO, CALIFORNIA | | |

*Channel18  06-15-2024 18:33:57*
The five (5) subjects that were in room #225 run down the center stairs and flee on foot from the motel.



*Channel18  06-15-2024 18:34:04*
The five (5) subjects that were in room #225 run down the center stairs and flee on foot from the motel.



| REPORTING OFFICER | ID # | DATE | FURTHER ACTION YES | REVIEWED BY | DATE |
|---|---|---|---|---|---|

28

# ENCLOSURE (2)

**Minute Order from Defendant's State case terminating diversion.**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
Criminal Division
Burbank Dept. - 3

| | |
|---|---|
| **GLNGA110403-01** | **September 19, 2024** |
| The People of the State of California | 8:30 AM |
| vs. | |
| **MICHEL, GABRIEL BECERRA** | |

Honorable Rita L. Badhan, Judge
A. Ceja, Judicial Assistant

Proceedings Electronically Recorded, Court Reporter

---

PC25850(a), PC25850(a)

**NATURE OF PROCEEDINGS:** Diversion Progress Report

The following parties are present for the aforementioned proceeding:

So Hyun Park Noh, Deputy Public Defender
Robert James Sherwood, Deputy District Attorney (appearance waived)

The Defendant fails to appear without sufficient excuse at 3:39 PM.

The matter is called for Diversion Progress Report.


Disposition as to Count 001, PC25850(a), Misdemeanor: Diversion Terminated, Criminal Proceedings Resumed


Disposition as to Count 002, PC25850(a), Misdemeanor: Diversion Terminated, Criminal Proceedings Resumed


Diversion terminated.

The Court issues a bench warrant for GABRIEL BECERRA MICHEL, in the amount of $10,000.00 by order of Judge Badhan, Rita L..

The Court advances to this date and vacates all matters currently set for hearing in this department.